# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **DOYLE HIGLEY** and **SHELLY HIGLEY**, husband and wife, | Case No. 3:12-cv-00502-SI |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| **FLAGSTAR BANK, FSB**, | |
| Defendant. | |

Jeffrey A. Myers, John Bowles, and Timothy Zimmerman, Bowles Fernández Law LLC, 5200 SW Meadows Road, Suite 150, Lake Oswego, Oregon 97035. Attorneys for Plaintffs.

Kevin H. Kono, Davis Wright Tremaine LLP, 1300 SW Fifth Avenue, Suite 2400, Portland, Oregon 97201-5610 and Frederick B. Burnside, Davis Wright Tremaine LLP, 1201 Third Avenue, Suite 2200, Seattle, Washington 98101. Attorneys for Defendant.

**SIMON, District Judge**.

In 2008, Plaintiffs Doyle and Shelly Higley (the "Higleys") obtained a loan secured by a trust deed to purchase property. When they defaulted on the loan two years later, Northwest Trustee Services and Defendant Flagstar Bank, FSB ("Flagstar") commenced the nonjudicial foreclosure process set forth in the Oregon Trust Deed Act ("OTDA"), Or. Rev. Stat. §§ 86.705 – 86.795. In this action, the Higleys assert two claims for relief and seek a declaration that Flagstar may not nonjudicially foreclose their trust deed under the OTDA. In their first claim, the Higleys allege that the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1461-1468, which governs the operation of federal savings associations such as Flagstar, preempts the

OTDA. In their second claim, the Higleys assert that Flagstar may not nonjudicially foreclose because not all assignments of the trust deed have been recorded in the county records, as required by Or. Rev. Stat. § 86.735(1). Before the Court is Flagstar's motion to dismiss for failure to state a claim. Dkt. 22. For the reasons stated below, the Court grants Flagstar's motion.

## BACKGROUND

In October 2008, the Higleys obtained a loan for $208,000 from Greater Northwest Mortgage, Inc. ("NW Mortgage") to purchase property in Clackamas County, Oregon. Amended Complaint ("Compl.") at ¶¶ 1, 3, 6 (Dkt. 15). The loan was secured by a trust deed. The trust deed names NW Mortgage as the lender, MERS as the beneficiary, and Fidelity National Title as the trustee. Dkt. 15-1 at 1. On March 27, 2009, NW Mortgage "was dissolved and ceased to operate as a business entity." Compl. ¶ 13.

On September 30, 2010, MERS executed an assignment of the trust deed from itself to Flagstar. Compl. ¶ 14; Dkt. 15-1 at 14. The assignment was recorded on October 25, 2010. *Id.* Flagstar executed an appointment of successor trustee naming Northwest Trustee Services ("NWTS") trustee on September 30, 2010. Compl. ¶ 16; Dkt. 15-1 at 15. The appointment of successor trustee was also recorded on October 25, 2010. *Id.*

Plaintiffs defaulted on the loan and NWTS executed a notice of default on October 21, 2010, and recorded that notice on October 25, 2010. Compl. ¶ 17, Dkt. 15-1 at 16-17. NWTS executed a Trustee's Notice of Sale on October 26, 2010. Dkt 15-1 at 18-20. NWTS originally scheduled the foreclosure sale to occur on February 28, 2011.[1] Dkt. 15-1 at 18. The sale was postponed and has not taken place. Compl. ¶¶ 18-19.

---

[1] The complaint alleges that the original proposed sale date was February 28, 2012. Compl. ¶ 18. The notice of sale, however, lists February 28, 2011.

On March 20, 2012, Plaintiffs filed suit against Flagstar and NWTS, seeking a permanent injunction to halt nonjudicial foreclosure and a declaration that nonjudicial foreclosure is inappropriate. Dkt. 1. Approximately one month later, on April 24, 2012, Flagstar recorded a "Sworn Affidavit, Transfer Statement, and Notice of Assignment." Dkt. 11, Ex. 1. This document states:

> Pursuant to ORS 79.0203(7) the indorsement and delivery of the Note to Flagstar constituted a transfer of the Note and Trust Deed to Flagstar, and this Sworn Affidavit, Transfer Statement, and Notice of Assignment operates as the recorded assignment of the Trust Deed consistent with the prior transfer. This Sworn Affidavit, Transfer Statement, and Notice of Assignment also constitutes a transfer statement within the meaning of ORS 79.0619.

Dkt. 11, Ex. 1. A copy of the indorsed note was attached to the affidavit. *Id.*

NWTS and the Higleys stipulated to the dismissal of NWTS and, on April 12, 2012, Judge Papak entered an order dismissing NWTS. Dkt. 9. Flagstar filed an Answer on April 30, 2012. Dkt. 11. On June 14, 2012, by stipulation, the Higleys filed an amended complaint. Dkt. 15. The amended complaint names only Flagstar as a defendant. Before the Court is Flagstar's motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 22.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). All reasonable inferences from the factual

allegations must be drawn in favor of the plaintiff. *Nw. Envtl. Def. Ctr. v. Brown*, 640 F.3d 1063, 1070 (9th Cir. 2011).

A complaint need not state "detailed factual allegations," but it must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Wilson,* 668 F.3d at 1140 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). The court, however, need not credit the plaintiff's legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678-679.

## DISCUSSION

The Higleys make two claims for relief. In their first claim, the Higleys ask the Court for a declaration "setting aside, voiding, and invalidating the present nonjudicial foreclosure process because" the Home Owners' Loan Act of 1933 ("HOLA"), 12 U.S.C. §§ 1461-1468, preempts the nonjudicial foreclosure process set forth in the Oregon Trust Deed Act ("OTDA"), Or. Rev. Stat. §§ 86.705 – 86.795. Compl. ¶¶ 27-36, 45(1). In their second claim, the Higleys allege that even if HOLA does not preempt the OTDA, Flagstar may not nonjudicially foreclose because not all assignments of the trust deed have been recorded in the county records, as required by Or. Rev. Stat. § 86.735(1). Compl. ¶¶ 37-44; *see James v. ReconTrust Co.*, 845 F. Supp. 2d 1145 (D. Or. 2012); *Niday v. GMAC Mortgage LLC*, 251 Or. App. 278 (2012), *review allowed*, No. S060655 (Sept. 27, 2012).

Flagstar raises several reasons why the Court should dismiss the Higleys' complaint. Two are dispositive. First, Flagstar contends that the Higleys failed to satisfy a notice-and-cure

provision in the trust deed. Def.'s Mem. at 7-8. Second, Flagstar argues that HOLA does not

preempt the entire OTDA. *Id.* at 8-11.

### A.      Notice and Cure

A provision in the Higley's trust deed provides that neither party may "commence . . .

any judicial action" without first notifying the other party of the alleged breach and affording

that party an opportunity to take "corrective action." The trust deed states:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action . . .
> that arises from the other party's actions pursuant to this Security Instrument or that
> alleges that the other party has breached any provision of, or any duty owed by reason of,
> this Security Instrument, until such Borrower or Lender has notified the other party . . . of
> such alleged breach and afforded the other party hereto a reasonable period after the
> giving of such notice to take corrective action.

Dkt. 15-1, Ex. 1. Flagstar argues that the Higleys failed to "allege compliance with [this] pre-

litigation notice-and-cure provision[.]" Def.'s Mem. at 7. As such, "the Court should dismiss [the

Higley's] claims on this basis alone." *Id.* at 8.

Several courts in other jurisdictions have found that identical notice-and-cure provisions

in trust deeds bar claims when the homeowners fail to provide notice before commencing an

action. *See Gerber v. First Horizon Home Loans Corp.*, No. C05-1554P, 2006 WL 581082

(W.D. Wash. Mar. 8, 2006) (failure to comply with notice-and-cure provision bars breach of

contract claim); *Niyaz v. Bank of Am.*, No. 1:10CV796, 2011 WL 63655 (E.D. Va. Jan. 3, 2011)

*aff'd*, 442 F. App'x 838 (4th Cir. 2011) (failure to comply with notice-and-cure provision bars

claims attempting to halt foreclosure).[2] Furthermore, similar contractual agreements providing

---

[2]  Although not relevant here, other district courts have commented that this notice-and-
cure provision does not bar state law tort and unfair business practices claims. *See Beyer v.
Countrywide Home Loans Servicing LP*, No. C07-1512MJP, 2008 WL 1791506 (W.D. Wash.
Apr. 18, 2008), *aff'd*, 359 F. App'x 701 (9th Cir. 2009) (the "Court concludes that the notice
provision does not bar Plaintiff's unjust enrichment and [state law statutory] claims"); *Schmidt v.
Wells Fargo Home Mortg.*, No. 3:11-CV-059, 2011 WL 1597658 (E.D. Va. Apr. 26, 2011),

for alternative dispute resolution are generally enforceable under Oregon law. *See Rueda v. Union Pac. R. Co.*, 180 Or. 133, 141 (1946) ("Limited arbitration or submission agreements when stated as conditions precedent to liability are not illegal and, when a plaintiff has brought suit without first pursuing the agreed procedure, they may be set up as a stay or a bar to the action."); *Lincoln Const., Inc. v. Thomas J. Parker & Associates, Inc.*, 289 Or. 687, 692 (1980) ("When a contract clearly expresses that a third person is to make final decisions respecting specified matters, such agreement is enforceable.").

The Higleys do not assert that they complied with the notice-and-cure provision. Instead, they argue that their failure to comply is "non-material, *de minimis*[,] and will do nothing to alter the outcome of the present case except to cause further delay." Pls.' Resp. at 9. With respect to the Higley's first claim for relief, the Court agrees. The notice-and-cure provision is intended to give the allegedly breaching party an opportunity to cure its breach. Yet, even if the Higleys had notified Flagstar of their contention that HOLA preempts the OTDA, Flagstar could not have taken "corrective action." Flagstar has no power to alter the relationship between state and federal law. The law does not "require the doing of a useless act." *Daugharty v. Gladden*, 217 Or. 567, 578 (1959). Notifying Flagstar that the Higleys contend that HOLA preempts the OTDA would have served no practical purpose. The Court finds, therefore, that the Higleys' first claim is not barred by their failure to comply with the notice-and-cure provision.

The same reasoning, however, does not apply to the Higleys' second claim. If the Higleys had notified Flagstar of their contention that Flagstar failed to comply with Or. Rev. Stat. § 86.735(1), Flagstar could have corrected the defect by recording the missing trust deed assignments. *See Oliver v. Delta Fin. Liquidating Trust*, No. 6:12-CV-00869-AA, 2012

---

*aff'd*, No. 11-1583, 2012 WL 5352512 (4th Cir. Oct. 31, 2012) ("notice-and-cure provisions do not extend to claims based on deceptive business practices").

WL 3704954 (D. Or. Aug. 27, 2012) ("assignments of the trust deed need only be recorded prior to the non-judicial foreclosure and not concurrent to when they actually occur" (internal quotation marks and citation omitted)). Alternatively, in the event that such assignments did not exist, Flagstar could have done what it did *after* the Higleys filed their suit: Flagstar could have filed an affidavit pursuant to Or. Rev. Stat. § 86.0607, along with a copy of the indorsed note.[3] *See* Dkt. 11, Ex. 2; *see also Niday v. GMAC Mortg., LLC*, 251 Or. App. 278, 300 (2012) ("Nothing prevents parties from recording a copy of the indorsed note or a separate writing memorializing that transfer."). By failing to comply with the notice-and-cure provision, the Higleys deprived Flagstar of an opportunity to correct the missing assignments. As a consequence, the Higleys' second claim is barred by the notice-and-cure provision and is, therefore, dismissed without prejudice.

**B.    HOLA Preemption**

In their first claim for relief, the Higleys allege that HOLA preempts the entire OTDA.

**1.    Preemption generally**

The Supremacy Clause in the United States Constitution permits Congress to preempt state law. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203 (1983); *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008); U.S. Const., Art. VI, cl. 2.

Congress may expressly "define the extent to which its enactments pre-empt state law." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299 (1988). Absent an explicit statutory command for preemption, however, the Supreme Court has "recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is so pervasive as

---

[3]    The Court does not decide in this case whether the "Sworn Affidavit, Transfer Statement, and Notice of Assignment," Dkt. 11, Ex. 1, filed by Flagstar cured the allegedly missing assignments. The Trust Deed, however, required the Higleys to provide Flagstar with an opportunity to attempt to cure the defect. The Higleys did not do that.

to make reasonable the inference that Congress left no room for the States to supplement it, and conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (internal quotation marks and citations omitted). "Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards." *Arizona v. United States*, --- U.S. ---, 132 S. Ct. 2492, 2502 (2012). The Higleys premise their claim that HOLA preempts the OTDA on the doctrine of field preemption. Pls.' Resp. at 12.

The Supreme Court has established two principles that guide courts considering preemption claims. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86 (1996). First, preemption "fundamentally is a question of congressional intent." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). Accordingly, "any understanding of the scope of a pre-emption statute must rest primarily on a fair understanding of *congressional purpose*." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86 (1996) (internal quotation marks and citation omitted; emphasis in original). Congress's "intent . . . primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it." *Id.* at 486 (internal quotation marks and citation omitted). In reviewing a statute and its framework, courts "must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987) (internal quotation marks and citations omitted).

Second, where the states have traditionally occupied an area of regulation, courts should "start with the assumption that the historic police powers of the States were not to be superseded

by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic*, 518 U.S. at 485 (internal quotation marks and citation omitted). This principle applies to questions concerning the scope of the field preemption. *English*, 496 U.S. at 79 ("Where the field which Congress is said to have preempted includes areas that have been traditionally occupied by the States, congressional intent to supersede state laws must be clear and manifest." (internal quotation marks, citations, and alterations omitted)); *see also Medtronic*, 518 U.S. at 485 (principle applies to the scope of preemption as well as to the question of whether Congress intended a federal law to preempt state law at all).

2.    **The Home Owners' Loan Act**

Congress passed HOLA in 1933. 48 Stat. 128 (codified at 12 U.S.C. § 1461 *et seq.*). At the time, Congress was dissatisfied "with state law and practice in the financing of home construction." *Conference of Fed. Sav. & Loan Assocs. v. Stein*, 604 F.2d 1256, 1257 (9th Cir. 1979), *aff'd*, 445 U.S. 921 (1980). As "many as half of all home loans in the country were in default. . . . Local institutions that had previously supplied funds to finance homes had ceased doing business or had discontinued such long-term loans, so that more than half the counties in the country, containing almost one-fifth of the total population, were without home-financing institutions." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159-60 (1982). Congress designed HOLA to addresses these problems by "creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide best practices." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008) (internal quotation marks and citation omitted).

HOLA vested the Federal Home Loan Bank Board (the "Board"), and, after 1989, its successor agency, the Office of Thrift Supervision ("OTS"), with plenary authority to administer

its provisions.[4] *See De la Cuesta*, 458 U.S. at 144. Under HOLA, OTS was responsible "for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings associations[.]"12 U.S.C.A. § 1464(a)(1) (2008). Consistent with that broad congressional mandate, the Board and OTS "adopted comprehensive rules and regulations concerning the powers and operations of every Federal savings and loan association from its cradle to its corporate grave." *People of State of Cal. v. Coast Fed. Sav. & Loan Ass'n*, 98 F. Supp. 311, 316 (S.D. Cal. 1951). In 2008, when Flagstar obtained the Higleys' loan, OTS had issued rules governing, for example, the chartering, deposits, lending, record keeping, and operations of federal saving associations. *See* 12 C.F.R. Parts 544, 557, 560, 562, and 563. OTS had not, however, issued any regulations that set forth a process by which federal savings associations were to foreclose residential home loan mortgages or trust deeds.

Although HOLA does not expressly preempt state law, OTS has "long taken the position that the federal lending laws and regulations occupy the entire field of lending regulation for federal savings associations, leaving no room for state regulation." OTS Final Rule, 61 FR 50951 (Sept. 30, 1996). OTS made this position explicit in 1996 when it issued new lending and investment regulations for federal savings associations. In a regulation addressing preemption of state laws, 12 C.F.R. § 560.2, OTS provided that "OTS hereby occupies the entire field of

---

[4]  In 1989, Congress abolished the Federal Home Loan Bank Board and transferred its powers under HOLA to the Office of Thrift Supervision. The Financial Institutions Reform, Recovery, and Enforcement Act at Titles III-IV, Pub. L. No. 101–73, 103 Stat. 183 (1989). In 2010, Congress abolished the Office of Thrift Supervision and transferred agency authority of HOLA to the Comptroller of Currency. The Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") at §§ 312(b)(2)(B) and 313, Pub. L. No. 111-103, 124 Stat 1376 (2010) (codified at 12 U.S.C. §§ 5412 and 5413). In 2008, when the Higleys obtained their loan and executed the trust deed, OTS was charged with regulating federal savings associations. *See* footnote 5, below.

lending regulation for federal savings associations."[5] *Id.* at § 560.2(a). In paragraph (b) of that regulation, OTS provided a list of the types of state laws that are preempted by HOLA and, in paragraph (c), a list of the types of state laws that are not preempted by HOLA. *Id.* at § 560.2(b)-(c).

In the introduction to the final rule promulgating this regulation, OTS set forth a three-step process to be used in analyzing whether HOLA preempts a particular state law:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS Final Rule, 61 FR 50951-01 (Sept. 30, 1996). The Ninth Circuit has endorsed this three-step process. *Silvas*, 514 F.3d at 1005-06. Among the laws listed in paragraph (b) are "state laws purporting to impose requirements regarding . . . (10) [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages[.]" 12 C.F.R. § 560.2(b)(10). Among

---

[5]  Dodd-Frank amended HOLA to provide that HOLA "does not occupy the field in any area of State law" and preemption decisions "shall be made in accordance with the laws and legal standards applicable to national banks regarding the preemption of State law." Dodd-Frank § 1046 (codified at 12 U.S.C. § 1465). Dodd-Frank made clear, however, that it did not "alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by . . . the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law to any contract entered into on or before the date of enactment of this Act, by . . . Federal savings associations[.]" *Id.* at § 1043 (codified at 12 U.S.C. § 5553). Thus, because the Higleys obtained their loan and signed the trust deed in 2008, the OTS regulations regarding preemption, 12 C.F.R. § 560.2, control the resolution of this case. *See Copeland-Turner v. Wells Fargo Bank*, 800 F. Supp. 2d 1132, 1138 (D. Or. 2011); *Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 91 n.9 (D. Mass. 2012). The parties do not dispute this conclusion.

the types of state law exempt from preemption listed in paragraph (c) are real property laws. *Id.* at § 560.2(c)(2).

### 3.      Application of HOLA preemption to the OTDA

The parties agree that Flagstar is a federal savings association and subject to regulation under HOLA. In their first claim for relief, the Higleys allege that, as such, Flagstar may not nonjudicially foreclose their trust deed because HOLA preempts Oregon's nonjudicial foreclosure scheme, as set forth in the OTDA. Compl. ¶33. Without resort to the OTDA, and because HOLA does not provide a federal foreclosure scheme, the Higleys allege that Flagstar may only foreclose the Higleys' trust deed by using the judicial foreclosure process. Compl. ¶ 35. In its motion to dismiss, Flagstar argues that the Court should dismiss the Higleys' claim because HOLA does not preempt the entire OTDA.[6] Def.'s Mem. at 9-11.

Before turning to the OTS three-step preemption analysis, it is important to bear in mind the Supreme Court principle, discussed above, that "the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic*, 518 U.S. at 485 (internal quotation marks and citation omitted). This principle is critical here because the regulation of foreclosure is, and has always been, the exclusive province of the states.[7] *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 541-45 (1994)

---

[6]  Although Flagstar argues that HOLA does not preempt the entire OTDA, they also argue, in response to the Higleys' second claim for relief, that HOLA preempts one provision of the OTDA, Or. Rev. Stat. § 86.735(1). Def.'s Mem. at 13-14. Because the Court finds that the Higleys' second claim for relief must be dismissed because the Higleys failed to comply with the trust deed's notice-and-cure provision, it is unnecessary for the Court to consider Flagstar's argument. Nonetheless, for the same reasons that the Court finds that HOLA does not preempt the entire OTDA, the Court is skeptical that HOLA preempts Or. Rev. Stat. § 86.735(1).

[7]  In *Silvas*, the Ninth Circuit held that the "strong presumption against federal preemption of state law governing historic police powers" did not apply to HOLA because Congress, not the states, has historically regulated banking. 514 F.3d at 1004. As noted above, however, Congress has not intruded into the states' governance of foreclosure. *BFP v. Resolution*

(regulation of foreclosure is an "essential state interest"); *Rank v. Nimmo*, 677 F.2d 692, 697 (9th Cir. 1982) ("mortgage foreclosure has traditionally been a matter for state courts and state law" (quoting *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 361 (5th Cir. 1977))); *see also Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."). Accordingly, this Court may only find that HOLA preempts the OTDA if it finds a clear and manifest congressional intent for HOLA to supersede state foreclosure laws.

### a.    Step one

The first step of the OTS three-step preemption analysis requires the Court "to determine whether the type of law in question is listed in paragraph (b)." As noted above, 12 C.F.R. § 560.2(b)(10) provides in part that laws imposing requirements on the "servicing" and "sale . . . of" mortgages are preempted. According to the Higleys, the OTDA fails to pass the first step of OTS's three-step preemption analysis because the OTDA "seek[s] to regulate the servicing of mortgages[.]" Compl. at ¶ 33. Several district court decisions support the Higleys' claim. In *Copeland-Turner v. Wells Fargo Bank*, 800 F. Supp. 2d 1132, 1141 (D. Or. 2011), for example, a court in this district held that HOLA preempts Or. Rev. Stat. § 86.735(1), a provision of the OTDA that requires the beneficiary or trustee to record trust deed assignments. The court noted that under "the OTS regulation, state laws purporting to impose requirements regarding security property, regarding disclosures made in credit-related statements, and regarding processing,

---

*Trust Corp.*, 511 U.S. 531, 541-45 (1994). Thus, the presumption against preemption remains in effect where HOLA is alleged to preempt state foreclosure laws, even if the presumption against preemption is not applicable to state laws that affect banking generally.

origination, servicing, sale or purchase of, or investment or participation in, mortgages, are preempted."[8] *Id.* (internal quotation marks and citations omitted).

In addition, several California district courts found that HOLA preempts certain provisions of California's nonjudicial foreclosure scheme because they are the types of state law listed in paragraph (b). For instance, three district courts found that Cal. Civ. Code § 2923.5, which requires trust deed beneficiaries to contact the borrower before filing a notice of default, imposes requirements regarding the servicing of mortgages and is, therefore, preempted under paragraph (b). *Murillo v. Aurora Loan Services, LLC*, No. C 09-00503 JW, 2009 WL 2160579 (N.D. Cal. July 17, 2009); *Odinma v. Aurora Loan Services*, No. C09-4674 EDL, 2010 WL 1199886 (N.D. Cal. Mar. 23, 2010); *Parcray v. Shea Mortg. Inc.*, No. CV-F09-1942OWW/GSA, 2010 WL 1659369 (E.D. Cal. Apr. 23, 2010). Two other California district courts held that Cal. Civ. Code § 2924, which provides for certain notices in advance of a nonjudicial foreclosure sale, falls within the list of preempted laws in paragraph (b). *Stefan v. Wachovia*, No. C 09-2252 SBA, 2009 WL 4730904 (N.D. Cal. Dec. 7, 2009) (the "Plaintiff's . . . state law claims fall within the purview of section 560.2(b), as they attack Defendant's initiation of the state foreclosure process"); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119 (N.D. Cal. 2010).

Notwithstanding these decisions, however, for several reasons this Court finds that the OTDA's nonjudicial foreclosure process is not among the types of laws included in paragraph (b). First, contrary to the Higleys' allegation, the term "servicing" does not include foreclosure. The OTS regulations do not define "servicing." The Supreme Court has noted (in a different

---

[8]  As this quote makes clear, the court in *Copeland-Turner* also relied on 12 C.F.R.§§ 560.2(b)(7) (covering laws regarding "[s]ecurity property") and (9) (covering "laws requiring specific statements, information, or other content to be included in . . . credit-related documents"). The Higleys do not allege that the OTDA falls within either of these categories.

context), however, that "servicing" is "essentially the administrative tasks associated with collecting mortgage payments." *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2875 (2010) (citing J. Rosenberg, DICTIONARY OF BANKING AND FINANCIAL SERVICES 600 (2d ed.1985)). Foreclosure, in contrast, is a "legal proceeding to terminate a mortgagor's interest in property, instituted by the lender (the mortgagee) either to gain title or to force a sale in order to satisfy the unpaid debt secured by the property." BLACK'S LAW DICTIONARY 719 (9th ed. 2009). Thus, "servicing" concerns the collection of mortgage payments; "foreclosure" concerns the termination of a borrower's interest in property. Under these definitions, "servicing" is not an umbrella term that includes "foreclosure."

In *Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75 (D. Mass. 2012), District Judge Woodlock concluded that "servicing" does not include "foreclosure." Judge Woodlock noted that OTS did not define "servicing," but he found that the definition of "servicing" provided in the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(i)(3) was instructive. *Id.* at 100. According to that statute, "servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest . . . with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." Like the definition in *Morrison*, this definition does not include "foreclosure" or other terms relating to the termination of a borrower's interest in property.

Judge Woodlock also explained that a broad definition of "servicing" would render much of paragraph (b) redundant:

> If one defines "servicing" to mean everything that a loan servicer might hypothetically do, including conducting a foreclosure sale, this broad definition would render some of the other categories within 12 C.F.R. 560.2(b) unnecessary (such as escrow accounts, which can be controlled by servicers, and due-on-sale clauses, which can be enforced by servicers). The Supreme Court has "cautioned against reading a text in a way that makes part of it redundant." *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S.

644, 669 (2007). "Servicing" should not be read to swallow whole every post-origination loan-related action.

*Id.* at 100. Accordingly, the use of the word "servicing" in 12 C.F.R. § 560.2(b)(10) does not demonstrate a clear and manifest congressional purpose to preempt state foreclosure laws.[9]

Second, if OTS intended to preempt state foreclosure laws, it could have easily done so by including the word "foreclosure" among the list of mortgage-related activities in 12 C.F.R. § 560.2(b)(10). Under the doctrine of *expressio unius est exclusio alterius*, the absence of the term "foreclosure" among the list of mortgage-related activities in § 560.2(b)(10) is telling. That doctrine "as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." *Boudette v. Barnette*, 923 F.2d 754, 757 (9th Cir. 1991). Section 560.2(b)(10) designates a variety of activities—servicing, origination, investment, participation, sale—but does not include foreclosure. Accordingly, a court may presume that the omission is intentional. The California Court of Appeals made a similar observation: Given "the traditional state control over mortgage foreclosure laws, it is logical to conclude that if the Office of Thrift Supervision wanted to include foreclosure as within the preempted category of loan servicing, it would have been explicit. Nothing prevented the office from simply adding the words 'foreclosure of' to section 560.2(b)(10)." *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 231 (2010).

Third, the absence of a federal foreclosure remedy makes it unlikely that Congress intended to preempt state foreclosure laws. As noted above, OTS regulations govern many

---

[9]  One might argue that the term "sale," also used in 12 C.F.R. § 560.2(b)(10), refers to the sale of the property securing the mortgage, which occurs at the end of the foreclosure process. Such an argument, however, would be incorrect. Financial institutions commonly sell mortgages on a secondary market. *See* G. Nelson and D. Whitman, REAL ESTATE FINANCE LAW § 5.27 (5th ed. 2007). The term "sale" applies to the sale of mortgage instruments in this market, rather than to the sale of the property securing the mortgage at a foreclosure.

aspects of the operation of federal savings associations. But OTS did not prescribe a process for foreclosing mortgages and trust deeds. That absence is an indication that Congress did not intend for HOLA to supplant well-established state foreclosure laws. *See Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984) ("This silence takes on added significance in light of Congress' failure to provide any federal remedy for persons injured by such conduct. It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct."). Indeed, if the Higleys are correct that HOLA preempts the OTDA, HOLA would certainly also preempt Oregon's judicial foreclosure process. *See* Or. Rev. Stat. §§ 88.010 – 88.120. The result, however, of such extensive preemption would be to leave federal savings associations with no option at all to foreclose a trust deed or mortgage. That result is inconsistent with OTS's stated objective of providing federal savings associations "maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation." 12 C.F.R. § 560.2(a).

In summary, 12 C.F.R. § 560.2(b)(10) does not evince a clear and manifest congressional purpose to preempt the OTDA in particular or state foreclosure laws in general. The Higleys rely solely on § 560.2(b)(10), and not on the other exemplars of preempted state laws enumerated in paragraph (b), to claim that HOLA preempts the OTDA. It is unnecessary, therefore, for the Court to consider whether the OTDA might be preempted by other provisions in paragraph (b), such as § 560.2(b)(7), relating to security property, and § 560.2(b)(9), relating to certain disclosure requirements. Nonetheless, it is worth noting that neither of these sections expressly addresses foreclosure.

### b.    Step two

The second step of the OTS preemption analysis is to determine "whether the law affects lending." There is little doubt that foreclosure laws "affect the lending operations of federal savings banks[.]" *Sovereign Bank*, 863 F. Supp. 2d at 101. Accordingly, under OTS's analysis, a presumption arises that the law is preempted.

### c.    Step three

The final step provides that this "presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c)." One of the examples of state law listed in paragraph (c) is "real property law." Although the OTDA provides a process by which lenders can recover the security on a loan, its provisions are primarily designed to provide for the efficient, orderly, and secure transfer of title to real property. The OTDA's notice and recording provisions, *e.g.*, Or. Rev. Stat. §§ 86.737-86.750, protect borrowers from the unauthorized dispossession of property by requiring creditors to provide the borrower and other interested parties with notice of the pending foreclosure. Or. Rev. Stat. § 86.735(1) requires the creditor to establish its right to foreclose by recording documents evincing the chain of title in county property records. *See In re McCoy*, 446 B.R. 453, 458 (Bankr. D. Or. 2011) ("Oregon law permits foreclosure without the benefit of a judicial proceeding only when the interest of the beneficiary is clearly documented in a public record."). Or. Rev. Stat. §§ 86.755 and 86.765 set forth the procedures by which the trustee sells the property and the sale proceeds are distributed. Or. Rev. Stat. § 86.770 describes the effect of the foreclosure sale on the rights of the parties. Taken together, these provisions represent "a well-coordinated statutory scheme to protect grantors [borrowers] from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting

grantor." *Staffordshire Inv., Inc. v. Cal–Western Reconveyance Corp.*, 209 Or. App. 528, 542

(2006). Thus, the OTDA clearly fits within the confines of 12 C.F.R. § 560.2(c)(2). As such, the

OTDA is not preempted by HOLA. The Higleys' first claim for relief is, therefore, dismissed

with prejudice.

**CONCLUSION**

Defendant's motion to dismiss, Dkt. 22, is **GRANTED**. Plaintiffs' first claim for relief is

dismissed with prejudice. Defendants' second claim for relief is dismissed without prejudice.

IT IS SO ORDERED.

Dated this 21st day of December, 2012.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge